**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                       CR 13-3895 MCA

EDGAR SOLIS,

     Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on *Defendant Edgar Solis's Motion to Suppress Evidence and Memorandum in Support Thereof* ("Motion to Suppress"), filed on January 6, 2015, (Doc. 85); the *United States' Response to Defense Motion to Suppress* ("Response"), filed on January 20, 2015, (Doc. 96); and *Defendant Edgar Solis' Reply to Government's Response to Mr. Solis' Motion to Suppress Evidence and Memorandum in Support Thereof* ("Reply"), filed on February 4, 2015. (Doc. 108). United States Chief District Judge M. Christina Armijo referred the Motion to Suppress to this Court to make findings of fact, conduct legal analysis, and recommend an ultimate disposition. (Doc. 87). On February 11 and 20, 2015, the Court held an evidentiary hearing. (Doc. 127; Doc. 143). After the hearing, both Defendant and the Government submitted proposed findings of fact and conclusions of law to the Court. (Doc. 146; Doc. 150).

Defendant asks the Court to suppress the evidence that was seized from the blue Dodge Nitro that Defendant was driving pursuant to two separate searches by law enforcement officials. The Court has considered the Motion to Suppress, the Response, the Reply, the evidence submitted by both parties, and the proposed findings of fact and conclusions of law. The Court finds that the searches were lawful, and recommends that

the Motion to Suppress be **DENIED**.

## I.    Background

On November 13, 2013, law enforcement officers of the Albuquerque Police Department ("APD") and agents with the U.S. Department of Homeland Security ("DHS") were conducting a combined undercover narcotics investigation in Albuquerque, New Mexico. (Tr. 1 at 60–61; Govt. Ex. 1 at 2).[1] APD Detectives Herman Martinez and Jaime Rascon, along with others, were on a Homeland Security Investigations ("HSI") task force with HSI Special Agent Chris Martin, who had obtained ten kilograms of cocaine for an undercover drug deal. (Tr. 1 at 39, 60–61; Tr. 2 at 36–37; *Id.* at 53 ¶ 20–25; Govt. Ex. 1 at 2). Detective Rascon arranged to sell five, or possibly eight, of those kilograms to Daniel Solis, who is Defendant's brother. (Tr. 1 at 38 ¶ 5–16; *Id.* at 39 ¶ 4–5; *Id.* at 61 ¶ 3–8).

On the afternoon of November 13, Daniel Solis met with Detective Martinez and Detective Rascon in a Costco parking lot to transact the drug deal. (Tr. 1 at 38–39, 50–51, 62–63; Govt. Ex. 4). An audio recording of the transaction was made by the undercover officers.[2]  (Govt. Ex. 2; Tr. 1 at 10 ¶ 17–19). Daniel Solis arrived at the parking lot, and sat in the passenger seat of the detectives' undercover vehicle. (Tr. 1 at 63 ¶ 6–8; *Id.* at 64 ¶ 16–17). The detectives placed a bag containing five kilograms of cocaine on the center console of the vehicle, and Daniel Solis removed one kilogram of

---

[1]  References to "Tr. 1" are to the transcript from the evidentiary hearing that took place on February 11, (Doc. 127), and references to "Tr. 2" are to the transcript from the continued evidentiary hearing that took place on February 20. (Doc. 143).

[2]  The Government submitted a transcription and translation of the audio recording. (Govt. Ex. 3). The recording was transcribed and translated from Spanish to English by the Government's expert, Nancy Valladares. (Tr. 1 at 15 ¶ 12–16; *Id.* at 23 ¶ 12–19). Defendant submitted changes to certain portions of the Government's transcription and translation with which his Spanish-language expert, Dinorah Gutierrez, disagreed. (Def. Ex. F at 8, 14, 26, 27, 28).

cocaine for inspection. (Tr. 1 at 45–47; *Id.* at 64 ¶ 18–25; Govt. Ex. 5, 6, & 7). Daniel

Solis cut into the one kilogram and began to feel and taste it, and expressed his

dissatisfaction as to its quality. (Tr. 1 at 47–48; *Id.* at 63 ¶ 14–19).

During the meeting, Detective Rascon observed Daniel Solis place three phone

calls to unknown third parties. (Tr. 1 at 49–50; *Id.* at 65 ¶ 3–9). Defendant arrived at the

Costco parking lot driving the Dodge Nitro; Defendant then got out of the Dodge Nitro,

walked to the detectives' vehicle, opened the passenger door, and placed his body

inside the interior of their vehicle. (*Id.* at 51 ¶ 8–24; *Id.* at 66 ¶ 12–24). At that time,

Daniel Solis was still sitting in the passenger seat of the undercover vehicle. (*Id.* at 66 ¶

25; *Id.* at 67 ¶ 1–2). One kilogram of cocaine was visible to Defendant, but the other four

kilograms were obscured inside the bag. (*Id.* at 67 ¶ 3–9).

Daniel Solis asked Defendant to test the cocaine. (Tr. 1 at 51 ¶ 17–20). Detective

Rascon observed Defendant roll some of the cocaine from the one kilogram cut between

his fingers and state that the cocaine was not shiny enough. (*Id.* at 55 ¶ 1–15). Daniel

Solis said "[w]e are going to throw it in water," (Def. Ex. F at 28; Govt. Ex. 3 at 28), and

asked for a bag in which to put the one kilogram cut of cocaine. (*Id.* at 58 ¶ 5–10; Def.

Ex. F at 29; Govt. Ex. 3 at 29). Defendant began to move away from the undercover

vehicle, and Daniel Solis got out of the undercover vehicle. (Tr. 1 at 58 ¶ 10–13).

Detective Rascon told Defendant and Daniel Solis to take both the one kilogram cut and

the additional four kilograms of cocaine. (*Id.* at 58 ¶ 14–15; Govt. Ex. 3 at 29). At the

same time, Detective Martinez gave the arrest signal to nearby officers, and Defendant

was arrested along with Daniel Solis. (Tr. 1 at 58 ¶ 17; *Id.* at 59; Govt. Ex. 3 at 29).

Detective Martinez sought to secure a warrant to search the Dodge Nitro. (Tr. 1 at

59 ¶ 9–14; Govt. Ex. 1). A search warrant was secured from Bernalillo County Metro Court Judge Michelle Dowler that same day, and executed by APD Detective Grant in the Costco parking lot. (Govt. Ex. 1; Tr. 1 at 120 ¶ 1–3; Tr. 2 at 54–55). As a result of the search of the Dodge Nitro, Detective Grant recovered 41 individually-wrapped crack (cocaine base) rocks inside the driver's side door panel of the Dodge Nitro, weighing 8.2 grams. (Tr. 1 at 121–22; Govt. Ex. 9; Doc. 96 at 6 ¶ 20).

HSI agents subsequently took possession of the Dodge Nitro, and drove it from the Costco parking lot to an HSI secure parking facility. (Tr. 2 at 56 ¶ 10–16). On November 14, 2013, Agent Martin completed a "Vehicle/Vessel/Aircraft Inventory and Receipt" ("DHS Form 58") for the vehicle. (Govt. Ex. 12 at 2; Tr. 2 at 47–50). DHS Form 58 was completed pursuant to   § 18.05.01 of the United States Customs Service ("USCS") OI Special Agent Handbook Evidence, also referred to as the "Chain-of-Custody" section.[3] (Govt. Ex. 17, § 18.05.01; Tr. 2 at 40–41). Section 18.05.01 provides rules for maintaining control over evidence, once acquired, to demonstrate that such evidence is presented to the court in the same condition as when it was first seized. (Govt. Ex. 17, § 18.05.01). In completing DHS Form 58, Agent Martin noted the equipment that was present in the Dodge Nitro and the condition of the vehicle, and identified the registered owner of the Dodge Nitro as Manuela Castillo De Solis, who is Defendant's mother. (Govt. Ex. 12 at 2; Tr. 2 at 42 ¶ 1–3; *Id.* at 51 ¶ 12–15).

Agent Martin notified the HSI division in El Paso that the Dodge Nitro was ready for transport so that an HSI Seized Property Specialist could conduct a more in-depth

---

[3]  Agent Martin testified that the USCS was absorbed by the Department of Homeland Security in 2003, but that the USCS Special Agent Handbook is still enforceable and implemented by HSI Special Agents. (Tr. 2 at 40–41). That handbook actually refers to a CF-58, Vehicle/Fessel/Aircraft Inventory and Receipt form, and not DHS Form 58. (Govt. Ex. 17, § 18.05.01). Agent Martin explained that CF-58 is now identified as "DHS-58." (Tr. 2 at 41 ¶ 8–11).

inventory search. (Tr. 2 at 46–48). The vehicle remained in the HSI parking lot in Albuquerque for approximately two weeks, until a third-party wrecker service retrieved it on November 26, 2013 for transport to El Paso to undergo administrative forfeiture procedures. (*Id.* at 48–49).

When the vehicle reached El Paso on November 27, 2013, it was searched without a warrant. (Tr. 1 at 154–55). At that time, HSI Seized Property Specialist, David Barkley, conducted a seven-point search, an x-ray, a "non-intrusive inspection," an examination of the gas tank, and a canine screening of the vehicle, as prescribed by the U.S. Customs and Border Patrol's Seized Asset Management and Enforcement Procedures Handbook ("SAMEPH"). (Govt. Ex. 10, § 5.1.4; Govt. Ex. 12 at 3–4; Tr. 1 at 126, 128–34, 155). SPS Barkley testified that while performing the search, the agents noticed that the panel around the gearshift appeared to have been tampered with because its rear-locking device was broken off and did not latch. (Tr. 1 at 137 ¶ 15–18). The agents observed an object underneath the Dodge Nitro's center console, removed the center console cover, and seized a loaded firearm underneath it. (*Id.* at 137, 140–41). A $100 bill was also found by SPS Barkley during his search of the Dodge Nitro. (Tr. 2 at 52–53).

The Dodge Nitro was subsequently released to the custody of Ms. Castillo, the registered owner of the vehicle. (Tr. 2 at 53). Defendant has been charged with conspiracy to possess with the intent to distribute five kilograms of cocaine, attempt to possess with the intent to distribute cocaine, possession with the intent to distribute cocaine base, felon in possession of a firearm, and possession of a firearm in furtherance of a drug trafficking crime. (Doc. 100).

## II.    Standard of Review

For evidence to be suppressed, Defendant must first demonstrate that his Fourth Amendment rights have been violated. *United States v. Torres-Castro*, 470 F.3d 992, 999 (10th Cir. 2006). The Fourth Amendment protects a person's right to be secure in their persons and effects against unreasonable searches and seizures. U.S. Const. amend. IV. An automobile is considered an "effect" under the Fourth Amendment, and therefore searches and seizures of automobiles, like the Dodge Nitro, are subject to the constitutional standard of reasonableness. *United States v. Chadwick*, 433 U.S. 1, 12 (1977). A defendant seeking to suppress certain evidence must prove by a preponderance of evidence that his Fourth Amendment rights were violated and that a "factual nexus between the illegality and the challenged evidence" exists. *Torres-Castro*, 470 F.3d at 999 ("In other words, [a defendant] must show 'but for' causation; that "the evidence sought to be suppressed would not have come to light but for the government's unconstitutional conduct.") (quotation omitted).

## III.   Analysis

Defendant moves to suppress evidence seized from the searches of the Dodge Nitro that took place on November 13 and 27, 2013, on the basis that both searches were unconstitutional. (Doc. 85). First, he challenges the sufficiency of the evidence which led to the issuance of the warrant authorizing the initial search of the Dodge Nitro on November 13. (*Id.* at 7–13). Defendant argues that the search warrant lacked probable cause on its face, and therefore the search of the Dodge Nitro pursuant to the search warrant was unconstitutional. (*Id.*). He maintains that the Court should not consider whether the good-faith exception applies to the search because the

Government waived that argument. (Tr. 2 at 72 ¶¶ 9–12). In the alternative, Defendant contends that the good-faith exception is inapplicable because Detective Martinez's search warrant affidavit was devoid of indicia of probable cause and contained material omissions and false or misleading statements.[4] (Doc. 85 at 13–17). Defendant also challenges the constitutionality of HSI's search of the Dodge Nitro conducted on November 27, 2013. (*Id.* at 17–21).

The Government responds that the search warrant affidavit contained sufficient facts for the issuance of the warrant. (Doc. 96 at 8–10). The Government argues that if the Court finds otherwise, the evidence seized pursuant to the November 13 search should not be excluded because the good-faith exception and the inevitable discovery doctrine apply. (Doc. 150 at 13–14; 17; Tr. 1 at 183 ¶¶ 21–22; Tr. 2 at 83 ¶¶ 11–12). Additionally, the Government contends that Detective Martinez's affidavit did not contain any knowing or reckless material omissions or false or misleading statements. (Doc. 96 at 10–13). The Government also responds that the November 27 warrantless search of the vehicle was lawful as a permissible inventory search. (*Id.* at 15).

A.    *November 13 Search Warrant*

First, Defendant challenges the search of the cocaine that was found in the driver's side door panel of the Dodge Nitro during the November 13 search of the vehicle. Defendant contends that the cocaine was seized pursuant to an unlawful warrant, as that warrant was issued without the requisite probable cause. Defendant claims that the affidavit on which the warrant issued was devoid of any information that could establish

---

[4] Defendant also cursorily challenges the November 13 search on the basis that the removal of the driver's side door panel exceeded the scope of the warrant. (Doc. 85 at 10). However, that issue was not raised at the evidentiary hearing or in Defendant's proposed findings of fact and conclusions law. The Court finds that Defendant has not sufficiently put forward that claim, and deems it waived.

probable cause or a factual nexus between the evidence sought and the Dodge Nitro. The Government disagrees entirely with Defendant's position, and in the alternative invokes both the good-faith exception and inevitable discovery doctrine. Defendant responds that the good-faith exception is inapplicable because the Government waived the argument, the warrant lacked indicia of probable cause, and Detective Martinez knowingly or recklessly made material omissions and misstatements in his affidavit. Accordingly, the Court will first determine whether there was probable cause for the issuance of the search warrant.

### 1.   *The Search Warrant Lacked Requisite Probable Cause*

Defendant argues that the search warrant affidavit submitted to Judge Dowler by Detective Martinez did not contain sufficient facts to establish probable cause. Specifically, Defendant contends that the affidavit failed to establish the required nexus between the suspected criminal activity and the Dodge Nitro. The Government responds that Judge Dowler had a substantial basis for issuing the warrant.

The Fourth Amendment requires that a warrant to search a particular place be supported by probable cause that contraband or evidence of a crime will be found there. *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also* FED. R. CRIM. P. 41(d)(1) ("[A] magistrate judge . . . must issue the warrant if there is probable cause to search for and seize a person or property."). In making that "practical, common-sense" determination, the issuing magistrate considers "all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." *Gates*, 462 U.S. at 238.

A reviewing court determines whether or not there was probable cause to support

the issuance of a search warrant by considering the "totality-of-the-circumstances."

*Gates*, 462 U.S. at 238. The reviewing court's duty "is simply to ensure that the magistrate

had a substantial basis for concluding that probable cause existed." *Id.* at 238–39

(quotations and alterations omitted). The reviewing court must pay "great deference" to

the issuing magistrate's finding of probable cause, *United States v. Nolan*, 199 F.3d 1180,

1182 (10th Cir. 1999), but need not defer "if there is no substantial basis for concluding

that probable cause existed." *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir.

2000) (quotation omitted).

  "Only the probability, and not a prima facie showing, of criminal activity is the

standard of probable cause." *Nolan*, 199 F.3d at 1182–83 (quotations omitted). Where

the police do not present oral testimony to the issuing magistrate, as was the case here,

the reviewing court ascertains the existence of probable cause to support a warrant

exclusively from the affidavit's four corners. *See Whiteley v. Warden, Wyo. State

Penitentiary*, 401 U.S. 560, 565 n.8 (1971). "The test is whether the facts presented in the

affidavit would 'warrant a man of reasonable caution' to believe that evidence of a crime

will be found at the place to be searched." *Nolan*, 119 F.3d at 1183 (quoting *Texas v.

Brown*, 460 U.S. 730, 742 (1983)). "[P]robable cause requires a nexus between the place

to be searched and the items to be seized." *Nolan*, 119 F.3d at 1183. The affiant must

also show a nexus between the place to be searched and the suspected criminal activity.

*United States v. Roach*, 582 F.3d 1192, 1200 (10th Cir. 2009). "[T]he affidavit supporting

the search warrant need not contain direct evidence or personal knowledge that the items

sought are located at the place to be searched." *Nolan*, 119 F.3d at 1183. The issuing

magistrate is permitted to "draw reasonable inferences from the material provided in the

warrant application." *Id.*

In the supporting affidavit for the search warrant, Detective Martinez described the arrangement between Detective Rascon and Daniel Solis to purchase cocaine, as well as the interaction between Daniel Solis and the detectives once Daniel Solis arrived at the Costco parking lot. (Govt. Ex. 1). Detective Martinez attested to the following facts related specifically to Defendant and the Dodge Nitro:

> Daniel then made a phone call to another subject ([Defendant]) and told him to come to the Cos[t]co to test the Cocaine.
>
> A short time later I observed [Defendant] drive up in a Dodge Nitro and park to the west of my undercover vehicle. [Defendant] came up to the front passenger side of my vehicle and stuck his body within the interior of my vehicle. [Defendant] then took a sample from the kilo that Daniel had opened and placed it in his mouth. [Defendant] and Daniel engaged in a short conversation regarding the quality of the Cocaine. Daniel advised Detective Rascon that he had brought enough cash for 5 kilos of Cocaine but wanted to make sure the quality was good before they bought the entire amount. Daniel advised that he and [Defendant] were going to doing(sic) another test on the kilo of Cocaine that he had opened and if they liked the quality they would purchase the other 4 kilos.
>
> Based on my training and experience it was apparent that [Defendant] and Daniel had conspired to purchase the Cocaine. It should be noted that both subjects took possession of the Cocaine and actively tried to test the quality of the cocaine by tasting it.

(*Id.* at 2–3).

The warrant authorized the search and seizure of eight categories of items: (i) cocaine and controlled substances; (ii) paraphernalia associated with the selling, packaging, concealing, manufacturing, and ingesting of any such substance; (iii) documents showing control over the Dodge Nitro; (iv) documents showing money laundering; (v) photographs or films depicting possession, negotiation, selling, purchasing, manufacturing, or distribution of a controlled substance; (vi) communication

devices used in the selling of controlled substances; (vii) U.S. currency or other fruits of the crime directly associated in drug trafficking; and (viii) all firearms. (Govt. Ex. 1 at 2). Thus, the search warrant sought particular items linked to the crimes of drug possession, drug trafficking, and money laundering.

Defendant contends that the information contained in the affidavit is insufficient to establish probable cause. More specifically, Defendant claims that Detective Martinez's affidavit does not provide the requisite nexus between the contraband or evidence of suspected criminal activity to be seized, and the Dodge Nitro. Defendant maintains that the only fact relied upon by Detective Martinez to support his request to search the Dodge Nitro was his statement that Defendant placed some of the cocaine in his mouth. Defendant contends that this fact alone was insufficient to establish the requisite nexus. The Government responds that Detective Martinez's description of the drug transaction, coupled with the fact that Defendant drove to the Costco parking lot in the Dodge Nitro, established reasonable probability that evidence of a drug crime was within the vehicle.[5]

First, Defendant contends that the warrant affidavit failed to connect him to any of the suspected criminal activity for which the warrant was sought. In his affidavit, Detective Martinez stated that Defendant tasted the cocaine and that in his opinion Defendant also conspired to purchase the cocaine. However, the affidavit indicated that only Daniel Solis, not Defendant, negotiated to buy cocaine from Detective Rascon. The Court finds that Detective Martinez's statements do not give rise to a reasonable inference that Defendant was engaging in drug trafficking, because "a warrant must be

---

[5] In its Response, the Government also invites the Court to consider additional facts surrounding the undercover drug transaction, which were not included in Detective Martinez's affidavit. Those circumstances and statements will not be reviewed because they are outside of the four corners of the affidavit. *See Whiteley*, 401 U.S. at 565 n.8.

supported by facts demonstrating probable cause, not by police summaries of what they have concluded from such facts." *Roach*, 582 F.3d at 1203; *see also Gates*, 462 U.S. at 239 (observing that a "mere conclusory statement" cannot provide the basis for probable cause). Here, Detective Martinez's lone observation that Defendant tasted cocaine failed to establish with any likelihood that Defendant was also trying to purchase cocaine.

Second, Defendant argues that the warrant contained insufficient facts to link evidence of the suspected criminal activity to the Dodge Nitro. "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1970) (quotation and alterations omitted). Here, the Dodge Nitro is only mentioned one time in the affidavit, to explain that Defendant drove it to the Costco parking lot. The affidavit is devoid of any information about the inside of Defendant's vehicle. Detective Martinez did not assert that he had direct or circumstantial knowledge that Defendant was selling drugs out of the Dodge Nitro, or that he was selling drugs at all. *See, e.g.*, *United States v. Elliott*, 322 F.3d 710, 716–17 (9th Cir. 2003) (holding that where an affiant stated that he had direct knowledge of suspect's drug-related activity in his apartment, it was reasonable for the magistrate to find probable cause to search suspect's vehicle for evidence of drug-related crime, where affiant opined that drug dealers often sell out of their vehicles).

Further there was no evidence that the detectives could see drugs in plain view inside of the Dodge Nitro. *See, e.g.*, *United States v. Johnson*, 599 F.3d 339, 347 (4th Cir. 2010) (holding that officer had probable cause for warrantless search of suspected

drug trafficker's vehicle, where suspect was seen going to the car before hand-to-hand encounters on street known for drug dealing, and drug paraphernalia was in plain view in vehicle). There were no facts that upon Defendant's arrest, he was found with drugs or drug paraphernalia, U.S. currency, or weapons on his person. *See, e.g.*, *United States v. Baker*, 719 F.3d 313, 319 (4th Cir. 2013) (noting that having found drugs and other items indicating involvement in the drug trade on the suspect's person, the law enforcement officer had probable suspicion to conduct a warrantless search of the vehicle in which the suspect was sitting for additional contraband). No facts were alleged that Detective Martinez believed that Defendant had brought money to purchase the cocaine and may have been secreting that money inside the Dodge Nitro.

An issuing magistrate may rely on an affiant's subjective belief that evidence of a suspected crime exists in a particular place, as long as she has reasonably determined that the suspect has engaged in the criminal activity. *See, e.g.*, *United States v. Emmons*, 24 F.3d 1210, 1215 (10th Cir. 1994) (finding that once issuing magistrate reasonably determined suspect involved in drug trafficking, magistrate could properly credit the affiant's opinion that upon his "training and experience" affiant believed that evidence of criminal activity was in a suspect's residence and vehicle). Here there was nothing to indicate why Detective Martinez believed there was a fair probability he would find contraband or evidence of a crime in a search of the Dodge Nitro, and therefore probable cause to search the vehicle was lacking. *See, e.g.*, *United States v. McCoy*, 483 F.3d 862, 864 (8th Cir. 2007).

The Government urges the Court to defer to Judge Dowler's finding of probable cause. The Court recognizes that there exists a strong preference for searches

conducted pursuant to a warrant, which frequently compels a reviewing court to defer to an issuing magistrate judge's determination of probable cause. *See United States v. Biglow*, 562 F.3d 1272, 1282 (10th Cir. 2009). However, the Court should not defer "if there is no substantial basis for concluding that probable cause existed." *Danhauer*, 229 F.3d at 1006 (quotation omitted). Here the warrant was so lacking in the required nexus between the alleged criminal activity and the Dodge Nitro that there was no substantial basis for concluding probable cause existed.

Therefore, the Court finds that the affidavit was too vague, generalized, and insubstantial to connect the Dodge Nitro to evidence of the suspected criminal activity. The search warrant was improperly issued as to the Dodge Nitro because the affidavit was legally insufficient to establish probable cause that contraband or evidence of the suspected criminal activity would exist therein.

### 2.    The Good-Faith Exception Applies to the Search

The Government argues that if the Court determines there was not probable cause to support the warrant, the evidence should not be suppressed because the officers relied in good faith on the sufficiency of the warrant. (Doc. 150 at 17 ¶ 3; Tr. 1 at 183 ¶¶ 21–22; Tr. 2 at 83 ¶¶ 11–12). Defendant responds that the Government has waived the good-faith exception, or in the alternative, that the good-faith exception does not apply because the warrant was lacking indicia of probable cause and Detective Martinez knowingly or recklessly misled Judge Dowler with materially false information in his affidavit.

14

### a)      The Good-Faith Exception Was Not Waived

Defendant contends that the Government has waived any argument that the good-faith exception is applicable to the November 13 search because it did not raise that issue in its Response to the Motion to Suppress. (Tr. 2 at 72 ¶¶ 9–12). However, the Government asserted the good-faith exception's applicability to the November 13 search twice during the evidentiary hearing, (Tr. 1 at 183 ¶¶ 21–22; Tr. 2 at 83 ¶¶ 11–12), and again in its proposed findings of fact and conclusions of law. (Doc. 150 at 17).

When a court determines that a warrant lacked probable cause, the Government bears the burden of showing that the good-faith exception applies. *See United States v. Gant*, 759 F.2d 484, 487 (5th Cir. 1985) (citing *United States v. Leon*, 468 U.S. 897, 924 (1984)). Generally, when officers have acted pursuant to such a warrant, the Government should be able to establish objective good faith without a substantial expenditure of judicial time. *Leon*, 468 U.S. at 924. Burden of proof usually has "little significance" in the context of the good-faith exception because the determination of good faith depends solely on an examination of the affidavit by the reviewing court. *See Gant*, 759 F.2d at 487–88 (holding that the Government's burden does not require presenting facts which could bolster or cure the inadequate warrant and affidavit, or providing testimony of an executing officer's subjective good-faith reliance).

Therefore, the Court finds that the Government needed to only assert that the good-faith exception applies, which it adequately did on three separate occasions. The Government was not required to submit any additional evidence, aside from the warrant affidavit, to meet its burden. Accordingly, the Court will next turn to whether the exception applies to the November 13 search.

b)      *Executing Officer Reasonably Relied on the Warrant*

The Government contends that the cocaine seized during the November 13 search of the Dodge Nitro is admissible because Detective Grant, the officer who executed the search warrant, acted with an objective good-faith belief that the warrant was properly issued by a neutral magistrate, and properly acted within its scope.

The good-faith exception provides that the exclusionary rule will not "bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Leon*, 468 U.S. at 905. The good faith test is an objective one. *United States v. Luong*, 470 F.3d 898, 902 (9th Cir. 2006). The Court must inquire "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. When reviewing the reasonableness of an officer's reliance upon a search warrant, the Court "examine[s] the underlying documents to determine whether they are devoid of factual support." *Danhauer*, 229 F.3d at 1006 (quotation omitted). There is a presumption that, when an officer relies upon a warrant, that officer is acting in an objectively reasonable manner. *United States v. McKneely,* 6 F.3d 1447, 1454 (10th Cir.1993). "This presumption, though not absolute, must carry some weight." *Id.* (quotation omitted).

Searches that are executed pursuant to a warrant rarely require any "deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Leon,* 468 U.S. at 922 (internal citations and quotation marks omitted). The question of good faith does not turn upon whether the officer's reliance on a warrant was misplaced. *United*

*States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985). Rather, "[i]t is only when the reliance was wholly unwarranted that good faith is absent." *Id*.

The Court finds that in light of the governing standard, that the facts presented in the warrant affidavit were not so insufficient as to preclude an officers' objectively reasonable reliance on Judge Dowler's probable cause determination. Thus, the Court must next consider whether Defendant has demonstrated that one of the exemptions to the good-faith exception should apply.

### c)      Affidavit Did Not Lack Indicia of Probable Cause

Defendant contends that Detective Martinez's affidavit was so inadequate as to render official belief in the existence of probable cause entirely unreasonable. The Government responds that the affidavit provided sufficient facts for Judge Dowler's finding of probable cause.

Reliance on a warrant is not objectively reasonable, and therefore the good faith exception cannot apply when the affidavit is lacking indicia of probable cause that official belief in its existence is objectively unreasonable. *Luong*, 470 F.3d at 902 (citing *Leon*, 468 U.S. at 914, 923). As explained above, the affidavit was devoid of probable cause. However, the Court accords a strong presumption in favor of a warrant search, and grants deference to a magistrate's probable cause determination in deciding whether the good-faith exception applies. *McKneely*, 6 F.3d at 1455. When a warrant affidavit contains sufficient facts to at least establish a "reasonable suspicion of criminal activity," then the Court must find that a reasonable officer would have assumed the search warrant was valid. *Id*. Further, there is nothing in the record to indicate that Detective Grant would have had any reason to believe that Detective Martinez's affidavit was

constitutionally invalid or questionable. *See id.*

The Court finds that the warrant, while legally insufficient, set forth at least indicia of probable cause.

### d)     The *Franks* *Exemption Does Not Apply*

Defendant also argues that the *Franks v. Delaware*, 438 U.S. 154 (1978), exemption to the good-faith exception applies because Judge Dowler was knowingly or recklessly misled by Detective Martinez. The Government responds that Detective Martinez did not knowingly or recklessly make material misstatements in his affidavit, and therefore the exemption does not apply. The Court held an evidentiary hearing under *Franks*. Detective Rascon and Detective Martinez testified as to their memory of what happened on November 13, (Tr. 1 at 32–100; *Id.* at 102–124), and the parties' Spanish-language experts also testified as to the audio recording. (*Id.* at 20–30; Tr. 2 at 8–35).

When a search warrant affiant is found to violate *Franks*, the good-faith exception is inapplicable. *See Leon*, 468 U.S. at 923. Pursuant to the Supreme Court's holding in *Franks,* the Court must exclude evidence that is discovered pursuant to a search warrant when:

> (1) a defendant proves by a preponderance of the evidence the affiant knowingly or recklessly included false statements in or omitted material information from an affidavit in support of a search warrant and (2) after excising such false statements and considering such material omissions [the Court] concludes the corrected affidavit does not support a finding of probable cause.

*United States v. Campbell*, 603 F.3d 1218, 1228 (10th Cir. 2010) (quotation and alterations omitted).

18

Defendant contends that Detective Martinez incorrectly described the conversation that took place in the Costco parking lot so as to bolster probable cause for the issuance of the warrant. As explained above, the conversation was recorded and spoken primarily in the Spanish language. (Govt. Ex. 2). The Government provided its own transcription and translation of the recording by its Spanish-language expert, Ms. Valladares. (Govt. Ex. 3). The Government contends that the facts described in the affidavit are an accurate depiction of what is heard on the recording. Defendant's Spanish-language expert, Ms. Gutierrez, reviewed the recording and the Government's proffered translation, and noted several areas of disagreement. (Def. Ex. F).

First, Defendant argues that the recording demonstrates that the chronology of events in the affidavit were incorrect. For example, in his affidavit, Detective Martinez wrote that after Defendant arrived and tasted the cocaine, that "Daniel[ Solis] advised Detective Rascon that he had brought enough cash for 5 kilograms of Cocaine but wanted to make sure the quality was good before they bought the entire amount." (Govt. Ex. 1 at 3). Detective Martinez also stated that "[Defendant] and [Daniel Solis] were going to doing(sic) another test on the kilo of Cocaine that [Daniel Solis] had opened and if they liked the quality they would purchase the other 4 kilos." (*Id.* 1 at 3).

The recording reveals that Defendant was not yet present at the Costco parking lot when Daniel Solis initially said that he had brought enough money to buy five kilograms of cocaine. (Govt. Ex. 3 and 2). Defendant also alleges that he was not present when Daniel Solis discussed taking the one kilogram of cocaine for testing, or when Daniel Solis promised to purchase the additional four kilograms of drugs if the quality was acceptable. (Doc. 146 at 20). However, the recording shows that Defendant

was present when Daniel Solis stated that he wanted to perform a water test on the cocaine, and if it was good he would "take the other one." (Govt. Ex. 3 at 28).

Defendant also contends that Detective Martinez misstated that Daniel Solis advised that he and Defendant would buy the other four kilograms of cocaine after they performed a test on the cut of one kilogram. Ms. Valladares transcribed the relevant portion of the conversation as follows: "We are going to come check it out. I want to check this one. We are going to throw it in water. You put it in water and then . . . and if it's good, I'll take the other one." (Govt. Ex. 3 at 28). Ms. Valladares stated at the hearing that she understood the difference between the first-person plural versions of the statements that she transcribed and translated. (Tr. 1 at 29–30).

Ms. Gutierrez testified that Daniel Solis spoke in the first person singular when he discussed performing the water test on the cocaine. (Tr. 2 at 32–33). Ms. Gutierrez changed the Government's translation to: "I put it in water and then . . . and if it's good, I'll take the other one." (Def. Ex. F. at 28). Thus, Defendant contends that the recording reveals that not only was he not going to test the cocaine using water, but that Daniel Solis never stated that they would both return to purchase the other four kilograms of cocaine.

Thus, Defendant concludes that the warrant misrepresents the content and context of the discussion between the detectives and Daniel Solis, by implying that Defendant was involved in the terms of the drug transaction, and that these material falsehoods were made with deliberate or reckless disregard for the truth. When a defendant raises a *Franks* challenge, as here, he must establish knowing or reckless falsity by a preponderance of the evidence before he may obtain suppression of the

evidence obtained from the search. *United States v. Corral-Corral*, 899 F.2d 927, 933 (10th Cir. 1990). "An affiant's negligence or innocent mistake resulting in false statements in the affidavit is not enough to satisfy a defendant's burden." *Id.*

Detective Martinez testified that he has limited Spanish-language ability, and therefore relied on Detective Rascon at times for assistance with understanding the Spanish spoken during the undercover drug transaction. (Tr. 1 at 103 ¶ 7–13). He stated that he understood some of the Spanish spoken during the drug deal, but not all of it, and asked Detective Rascon to help him understand the conversation that took place. (*Id.* at 103–104, 105 ¶ 9–19). Detective Martinez stated that everything that he submitted in his affidavit was true as he understood it. (*Id.* at 109 ¶ 2–5). Detective Martinez did not have the benefit of reviewing the transcription and translation of the audio recording when he completed the warrant affidavit. (*Id.* at 104). The Court finds that Detective Martinez is a credible witness, and that he testified truthfully with regard to the limits of his Spanish-language abilities and to his reliance on a fellow officer in preparing the warrant affidavit.[6]

Detective Rascon testified that he relayed to Detective Martinez his own observations of the drug transaction while Detective Martinez completed the warrant affidavit. (Tr. 1 at 59–60). Detective Rascon testified that Spanish is his first language, that he lived in Mexico for 12 years, and that he earned a Bachelor's degree in Spanish.

---

[6]  In a *Franks* challenge, the focus is the credibility of the affiant. *Corral-Corral*, 899 F.2d at 934. Defense counsel has attempted to impeach Detective Martinez based on the facts and circumstances of his testimony in the case *United States v. Benavidez*, 12-CR-3273 MCA. The Court takes judicial notice of the docket sheet in that case and the publicly-available documents filed in that case. Defense counsel alleges that Detective Martinez lied under oath during his testimony in that case. (Tr. 2 at 5–7). Chief Judge Armijo did not make any adverse credibility findings as to Detective Martinez in that case. Defense counsel had access to the impeachment material during her opportunity to cross-examine Detective Martinez, but did not question him regarding the *Benavidez* case. (Tr. 2 at 6). The Court therefore does not find the materials from the *Benavidez* case to be relevant to the issues before it.

(Tr. 1 at 33 ¶ 9–10, 19–24). A law enforcement officer may rely on a fellow officer in preparation of a warrant affidavit. *See United States v. Wilkinson*, 633 F.3d 938, 941 (10th Cir. 2011) (noting that this is often referred to as the "fellow officer" rule). Thus, under the circumstances, it was reasonable for Detective Martinez to rely on Detective Rascon's Spanish-language skills in preparing the warrant affidavit.

Further, the Court heard testimony from two credible Spanish-language experts, who disagree regarding the substance of several parts of the conversation that are in dispute. Ms. Gutierrez stated that she listened to one part of the audio recording hundreds of times, and even consulted a colleague, because she had difficulty understanding and translating the recording. (Tr. 2 at 24 ¶ 11–22). The Court cannot find that Detective Martinez or Detective Rascon knowingly or recklessly misinterpreted the substance of the conversation, on which two qualified experts in Spanish disagree. Further, Detective Martinez did not have the benefit of a transcription and translation at the time the affidavit was written.

Under these circumstances, Defendant has not satisfied his burden of proving that any alleged material misstatement was made knowingly or recklessly. This is clearly not a case where the affiant lied, either affirmatively or by omission, about every essential fact in the affidavit. *See, e.g.*, *United States v. Stout*, 641 F. Supp. 1074, 1082 (N.D. Cal. 1986) ("What is clear . . . is that [the affiant] was determined to let nothing stand in his way—not the truth, not the reviewing magistrate, and not the Constitution.").

The Court finds that the affidavit was sufficient on its face to justify an experienced agent to rely on it. Defendant has not shown that Detective Martinez knowingly or recklessly made material misstatements or omissions in the process of securing a

search warrant for the Dodge Nitro. Accordingly, the Court finds that the November 13

search was carried out in good faith.[7]

B.    _November 27, 2013 Search of the Dodge Nitro_

Defendant also challenges the lawfulness of the warrantless search of the Dodge

Nitro that was conducted by SPS Barkley on November 27, 2013.[8]  Defendant contends

that any evidence seized as a result of the search should be suppressed because it does

not fall within one of the exceptions to the Fourth Amendment's search warrant

requirement. The Government concedes that there was no probable cause for the

November 27 search, and argues that the search was nevertheless lawful as an

inventory search pursuant to HSI pre-forfeiture administrative search procedures.

Defendant responds that the search was unconstitutional because the Dodge

Nitro was impounded and subsequently seized in violation of APD's towing policy, the

search was not undertaken pursuant to a reasonable administrative procedure, and that

it was a subterfuge for an investigative purpose.[9]  (Doc. 146 at 22). Defendant also

argues that the HSI pre-forfeiture search cannot qualify as an inventory search because

a prior inventory search had already been conducted on the Dodge Nitro. (_Id._ at 22).

---

[7] The Government also argues that the inevitable discovery doctrine applies to the cocaine seized from the Dodge Nitro. Since the Court has found that the good-faith exception applies, it will not endeavor to analyze the contours of inevitable discovery in this case.

[8] Defendant initially alleged that this search occurred on February 7, 2014. (Doc. 85 at 17–21). However, after considering all of the materials placed into evidence and the hearing testimony, the Court concludes that the search being challenged actually took place on November 27, 2013.

[9] Defendant contends that the Dodge Nitro was seized impermissibly by HSI agents in violation of APD's towing policy, which allows APD officers to impound a vehicle driven by an arrestee subsequent to his arrest. (Def. Ex. A § 2-48-2). Defendant contends the policy required agents to determine whether they could release the Dodge Nitro to a responsible third-party before they were permitted to impound it. However, HSI agents, not APD officers, seized the vehicle from the Costco parking lot. Further, the Fourth Amendment does not require that a defendant driver be given the opportunity to make alternative arrangements for his vehicle. _United States v. Reyes-Vencomo_, 866 F. Supp. 1304, 1349 (D.N.M. 2012). Therefore, the Court finds APD's towing policy to be irrelevant to the inquiry into the November 27 search, and declines to address it further.

"Inventory searches of impounded vehicles are a well-defined exception to the Fourth Amendment's warrant requirement." *United States v. Cecala*, No. 99-4049, 203 F.3d 836 (10th Cir. Jan. 12, 2000) (unpublished) (citing *United States v. Haro-Salcedo*, 107 F.3d 769, 772 (10th Cir. 1997)). An inventory search is not an independent legal concept, but an incidental administrative step following arrest and preceding incarceration designed to "record the defendant's belongings to protect the police from potential liability." *United States v. Edwards*, 632 F.3d 633, 644 (10th Cir. 2001).

The Government has the burden of proving that a warrantless search justified as an inventory search fits within the parameters of the inventory exception as it has been fashioned by the Supreme Court. *United States v. Morgan*, 936 F.2d 1561, 1675 (10th Cir. 1991) (Seymour, J., dissenting). The propriety of an inventory search is judged by the standard of reasonableness. *Illinois v. Lafayette*, 462 U.S. 640, 643 (1983). The Government must establish that: (i) the inventory search was conducted pursuant to standardized procedures, *United States v. Moraga*, No. 02-2322, 76 Fed. Appx. 223, 228 (10th Cir. July 28, 2003) (unpublished); (ii) those inventory procedures were reasonable, *Morgan*, 936 F.2d at 1580 (citing *Florida v. Wells*, 495 U.S. 1, 3–4 (1990)); and (iii) the inventory was undertaken in good faith. *Colorado v. Bertine*, 479 U.S. 367, 374 (10th Cir. 1987).

The reasonableness of inventory procedures arise from three distinct needs: to protect an owner's property while it is in the custody of the police; to insure against claims of lost, stolen, or vandalized property; and to guard the police from danger. *Bertine*, 479 U.S. at 372. These governmental interests will outweigh an individual's Fourth Amendment interests when law enforcement officers conduct a warrantless inventory

pursuant to a standard agency procedure of a vehicle, *United States v. Judge*, 864 F.2d

1144, 1146–47 (5th Cir. 1989), as well as containers within that vehicle. *Bertine*, 479 at

375.

### 1. The Search Was Conducted Pursuant to HSI Procedure

The Government contends that the search was justified because it constituted a

lawful inventory search pursuant to asset forfeiture policies and proceedings, which falls

within the "well-defined exception to the warrant requirement." *Lafayette*, 462 U.S. at

643. Defendant challenges the November 27 administrative search on the basis that it

not authorized by a regulatory or statutory scheme.

The Government is responsible for demonstrating that law enforcement

conducted an inventory search in compliance with the existing standard police

procedures. "Standardized criteria" or "established routine" must regulate the inventory

search because "an inventory search must not be a ruse for a general rummaging in

order to discover incriminating evidence." *Wells*, 495 U.S. at 4.

The Government contends that § 5.1.4 of the SAMEPH provides a procedure for

conducting initial searches of seized vehicles being administratively processed, as either

proceeds of a crime or as being connected in some way to evidence of a crime. (Govt.

Ex. 10). Section 5.1.4 is undertaken for the purpose of creating personal property

inventories on all vehicles that are being administratively processed. (*Id.*).

SPS Barkley testified that as a Seized Property Specialist for HSI, he is required

to follow and comply with the SAMEPH directives in conducting administrative searches

of vehicles that come into his custody. (Tr. 1 at 126–28; Govt. Ex. 10). Section 5.1.4 of

SAMEPH requires that all motor vehicles that are either seized or detained be initially

screened within the first 24 hours after seizure, or before consignment to a national

seized property contractor or onsite release. (Govt. Ex. 10, § 5.1.4). Section 5.1.4

mandates that the screening entail a seven-point search, an x-ray of the vehicle, a

"non-intrusive inspection," an examination of the gas tank, and a canine screening. (*Id.*).

SPS Barkley stated that the purpose of the initial screening is to secure evidence,

contraband, and personal property or equipment found in the vehicle, as well as to

comply with the HSI directives. (Tr. 1 at 136–37, 155, 157, 159).

Defendant responds generally that a pre-forfeiture administrative search, such as

the one described in the SAMEPH, is not authorized by a regulatory or statutory scheme.

(Doc. 146 at 22). In *Cooper v. California*, 386 U.S. 58, 61–62 (1967), the Supreme Court

determined that a pre-forfeiture search of a seized vehicle was reasonable where an

officer had probable cause to initially seize the vehicle, and the search was conducted

for the purpose of the officer's own protection while the vehicle was impounded for over

four months. The Supreme Court held that "the examination or search of a car validly

held by officers for use as evidence in a forfeiture proceeding" was reasonable under the

Fourth Amendment. *Id.* at 62.

Applying the *Cooper* decision broadly, Circuit Courts have consistently upheld

pre-forfeiture, warrantless searches as constitutional inventory searches. *See, e.g.*,

*United States v. Smith*, 510 F.3d 641, 651 (6th Cir. 2007) (holding that vehicle was

validly searched pursuant to a pre-forfeiture inventory search policy where officers had

probable cause to believe vehicle could be seized pursuant to the "federal forfeiture

statute"); *United States v. Pace*, 898 F.2d 1218, 1245 (7th Cir. 1990) ("[W]here police

have probable cause to believe a car is subject to forfeiture, or have validly seized a car

for forfeiture, the police may search the car without a warrant."); *see also United States v. $29,000—U.S. Currency*, 745 F.2d 853, 856 (4th Cir. 1984), *United States v. Harris*, 727 F.2d 401, 405 (5th Cir. 1984), *United States v. Zaicek*, 519 F.2d 412, 414–15 (2d Cir. 1981), and *United States v. Young*, 456 F.2d 872, 875–76 (8th Cir. 1972). The Tenth Circuit has similarly interpreted *Cooper* as permitting an officer who seizes a vehicle pursuant to a state forfeiture statute providing for seizure of a vehicle used in the transportation of contraband, to conduct a warrantless search of the entire vehicle. *See United States v. Merryman*, 630 F.2d 780, 785 (10th Cir. 1980).

In this case, cocaine was found in the driver's side door panel of the Dodge Nitro when the search warrant was executed on November 13. It follows that the law enforcement officers had probable cause to believe it was forfeitable pursuant to a forfeiture statute, such as 21 U.S.C. § 881, as a vehicle used "to transport[] or . . . facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances]." *See Smith*, 510 F.3d at 651. Pre-forfeiture searches of vehicles believed to be subject to forfeiture are clearly permissible under the Fourth Amendment.

The Court finds that the Government demonstrated that the administrative procedure set forth in the SAMEPH describes the steps that HSI officials should take in searching vehicles in anticipation of forfeiture. The Court further finds that the November 27 search was conducted in compliance with the directives in SAMEPH.

### 2.   The Search Was Reasonable

Defendant challenges the SAMEPH's seven-point inspection as being unreasonable because it affords HSI agents impermissibly broad discretion in conducting pre-forfeiture inventory searches. (Doc. 146 at 19–20, 22). Defendant

contends that the policy permits agents to conduct investigatory searches under the guise of an administrative search. (*Id.*) However, Defendant points to no specific section of the SAMEPH procedure which he believes afforded agents such discretion, only stating that the seven-point procedure grants "officers latitude in the manner in which they conduct the search for contraband and other evidence." (Doc. 146 at 9 ¶ 70).

In conducting inventory searches, law enforcement officers are permitted to exercise judgment based on concerns related to the purposes of an inventory search, "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Bertine,* 479 U.S. at 375. An agency procedure that confers discretion on law enforcement officers in conducting an inventory search is not in itself "a fatal flaw"; rather, the Court asks "whether the agents' actions, when viewed from an objective standpoint, can reasonably be said to have an administrative or safety motivation, as opposed to an evidentiary one." *Judge,* 864 F.2d at 1146. Thus, an inventory search may be justified by a legitimate inventory purpose regardless of the searching officer's subjective intent to uncover criminal evidence. *Cecala,* 203 F.3d at *2.

The SAMEPH states that the seven-point inspection consists of checking the vehicle's hood/fenders, doors, roofs and floors, front and rear seats, rear panels, trunk, gas tank, and undercarriage, and that the engine, wheels, tires, and spare tires should be examined. (Govt. Ex. 10, § 5.1.4). The policy requires that the seven-point inspection be conducted on all seized vehicles without exception, and that a supervisor must certify the inspection is complete. (*Id.*).

Defendant cites several cases for the proposition that an administrative procedure

is unlawful when it grants an officer discretion to conduct a search for an investigatory motive. *See, e.g.*, *United States v. Bulacan*, 156 F.3d 963, 973 (9th Cir. 1998) (finding administrative search procedure unconstitutional because officers afforded complete discretion to choose which bags or containers to search based on their own individual judgment); *see also United States v. McCarty*, 648 F.3d 820, 833 (9th Cir. 2011) (finding that TSA agent could not have been motivated by a "programmatic second purpose" because she was focused solely on the discovery of threats to air travel safety). Those cases are not applicable to the circumstances here, however, because HSI agents do not have discretion whether to conduct the seven-point search. SAMEPH mandates that all seized vehicles be searched without exception.

The Court is therefore not persuaded by Defendant's argument that the seven-point search is unreasonable. Any discretion afforded to HSI agents pursuant to the SAMEPH is not so broad as to run afoul of the Fourth Amendment.

### 3.   *The Search Was Administered in Good Faith*

Defendant argues that the November 27 search was undertaken in bad faith, because it amounted to a general search for contraband and evidence of a crime. (Doc. 146 at 22). The Government responds that the November 27 search was conducted in good faith and pursuant to an acceptable purpose.

The Government must prove that the law enforcement officer administered inventory procedures in good faith and not for the sole purpose of investigation. *Bertine*, 479 U.S. at 372. The reasonableness of inventory procedures arise from three distinct needs: to protect an owner's property while it is in the custody of the police; to insure against claims of lost, stolen, or vandalized property; and to guard the police from danger.

*Bertine*, 479 U.S. at 372.

However, an inventory search is not rendered unconstitutional simply because it also had an investigatory purpose, provided that is not the sole purpose. *See Judge*, 864 F.2d at 1147; *United States v. Frank*, 864 F.2d 992, 1001 (3d Cir. 1988). Further, an officer's subjective intent for a search is immaterial. *See Lafayette*, 462 U.S. at 646 (holding that it was immaterial whether officer actually had a subjective fear of any particular package or container, because "the need to protect against such risks arises independent of a particular officer's subjective concerns.").

Defendant points to SPS Barkley's testimony that one aim of the November 27 search was to uncover contraband or evidence of a crime. (Tr. 1 at 155). However, SPS Barkley also testified that the SAMEPH search is conducted for the purpose of finding and securing personal property within the vehicle. (*Id.* at 136, 157, 159). That justification falls within the acceptable categories for conducting a warrantless search. *See Bertine*, 479 U.S. at 372–73. Further, a warrantless inventory search is permissible when completed for the purpose of uncovering evidence, as long as that is not the sole purpose of the search. *Id.*

There is no other direct or circumstantial evidence in the record that the agents were searching the vehicle as "a subterfuge for a 'general rummaging' for incriminating evidence." The chronology of events of the search does not demonstrate that the inventory search was actually conducted for investigatory, rather than administrative, purposes. *Cf. Edwards*, 632 F.3d at 644 (holding search was investigatory and inventory exception did not apply where officer testified he was assigned to search the suspect's vehicle for additional evidence of a crime and the decision to impound the car was not

made until after his search uncovered incriminating evidence). In the complete absence

of any evidence that officers were searching the Dodge Nitro for the sole purpose of

seeking out evidence, the Court finds that the warrantless inventory search was

reasonable. *See United States v. Rankin,* 261 F.3d 735 (8th Cir.2001).

### 4.    There is No Prohibition on Multiple Inventory Searches

Last, Defendant argues that the November 27 search cannot be considered an

inventory search because the Dodge Nitro was previously inventoried by Agent Martin

on November 14. (Doc. 146 at 22). Defendant maintains that the Government is not

entitled to "a second bite at the inventory search apple." (*Id.*). The Government responds

that the November 14 inventory of the car was not an inventory search because Agent

Martin did not inventory all of the items in the car.

SPS Barkley and Agent Martin testified that the USCS Special Agent Handbook,

HSI Search and Seizure Handbook, and SAMEPH contain the protocols for inventorying

and processing impounded vehicles. In accordance with agency policy, HSI agents may

conduct an initial inventory search of the seized vehicle; it is then sent to a Customs and

Border Protection processing facility for pre-forfeiture procedures.

Here, the record demonstrates that the Dodge Nitro was seized as evidence

relating to the charges on which Defendant was arrested, and searched pursuant to a

warrant that same day. The next day, Agent Martin completed DHS Form 58, titled

"Vehicle/Vessel/Aircraft Inventory and Receipt," pursuant to § 18.05.01 of the USCS

Special Agent Handbook, to identify the equipment contained in the Dodge Nitro and the

condition of the vehicle. (Govt. Ex. 12 at 2; Govt. Ex. 17). Defendant contends that this

search also constituted an inventory search pursuant to § 9.6.1 of the HSI Search and

31

Seizure Handbook. Section 9.6.1 of the HSI Search and Seizure Handbook provides the procedure HSI agents must follow in conducting a non-investigative inventory search "soon after a seizure or impoundment." Approximately two weeks later the Dodge Nitro was more thoroughly searched in accordance with SAMEPH procedures after it was impounded in El Paso.

Another district court, encountering almost identical facts, found that multiple inventory searches were permissible when they were conducted pursuant to a reasonable administrative policy. *See United States v. Reyes*, No. 1:11-CR-00009-ODE-RGV, *et seq.*, 2012 WL 176488, at *4-6 (N.D. Ga. Jan. 19, 2012) (unpublished). In *Reyes*, the defendant was arrested and the vehicle he was driving was searched pursuant to a police department's inventory procedure immediately prior to the vehicle being impounded by police. *Id.* at *4. The vehicle became subject to forfeiture, and was searched again more thoroughly four days later pursuant to the police department's forfeiture search policy. That search led to the discovery of a handgun. *Id.* The defendant challenged the pre-forfeiture administrative search on the basis that it was invalid per se as an inventory search, because a previous inventory search had been conducted. *Id.* Defendant in this case challenges the November 27 search on the same basis.

The *Reyes* court resolved the defendant's challenge pursuant to the Supreme Court's holding in *Cooper*, reasoning that the facts in *Cooper* were analogous to those before it. *Id.* at *5. The *Reyes* court explained that in *Cooper*, the police also seized the suspect's vehicle for impoundment, and then had to retain the vehicle pending forfeiture. *Id.* (citing *Cooper*, 386 U.S. at at 62). The officer's subsequent pre-forfeiture

administrative search was closely related to the reason the suspect was arrested, the reason his car had been impounded, and the reason it was being retained. *Id.* The *Cooper* court held that the police search of the vehicle prior to its forfeiture was reasonable for the officers' own protection. *Id.* Thus, the *Reyes* court reasoned that a second inventory search conducted in preparation for forfeiture proceedings and in accordance with standard criteria must also fall within the inventory search exception. *Id.* at 5–6. While the *Reyes* decision is not binding on this Court, it is persuasive for its application of the Supreme Court's reasoning in *Cooper.* Further, Defendant has failed to provide any legal authority in support of his own opposing legal conclusion.

Thus, the Court finds that in accordance with the Supreme Court's holding in *Cooper*, a second inventory search is not per se unconstitutional, as long as it is undertaken pursuant to a standard procedure that is not investigatory in nature. Given this finding, the Court need not decide whether the November 14 inventory of the car was also conducted pursuant to a lawful inventory search.

## IV.    Recommended Disposition

In sum, the Court finds that the search warrant issued on November 13, 2013 lacked probable cause. However, it was objectively reasonable for officers executing the search warrant to rely on the validity of the warrant. The Court does not find that the search warrant affidavit lacked indicia of probable cause, or that the affiant knowingly or recklessly misled the issuing magistrate. Therefore, the good-faith exception applies to the November 13 search. Further, the Court finds that the Dodge Nitro was searched lawfully on November 27, 2013 pursuant to a reasonable pre-forfeiture inventory search procedure.

For these reasons, the Court **RECOMMENDS** that *Defendant Edgar Solis's*

*Motion to Suppress Evidence and Memorandum in Support Thereof*, (Doc. 85), be

**DENIED**.

---

**THE PARTIES HAVE AGREED THAT WITHIN SEVEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **THE PARTIES HAVE ALSO AGREED THAT WITHIN SEVEN DAYS OF SERVICE** of a copy of any such written objections they may file a response with the Clerk of the District Court. **A party must file any objections with the Clerk of the District Court within the seven-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE