**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                             CR 13-3895 MCA

EDGAR SOLIS,

      Defendant.

## <u>PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>

**THIS MATTER** is before the Court on *Defendant Edgar Solis' Motion to Dismiss the Superseding Indictment for Vindictive and Retaliatory Prosecution and for Violations to His Right to Due Process* ("Motion to Dismiss"), filed on February 16, 2015, (Doc. 116); the *United States' Response to Defendant's Motion to Dismiss the Superseding Indictment for Vindictive Prosecution* ("Response"), filed on March 5, 2015, (Doc. 142); and *Defendant Edgar Solis' Reply to Government's Response to Defendant's Motion to Dismiss Indictment for Vindictive Prosecution* ("Reply"), filed on March 13, 2015. (Doc. 152). United States Chief District Judge M. Christina Armijo referred the Motion to Dismiss to this Court to make findings of fact, conduct legal analysis, and recommend an ultimate disposition. (Doc. 129).

Defendant asks the Court to dismiss Counts 1, 4, and 5 of the superseding indictment, which was returned by the grand jury on January 21, 2014. (Doc. 100). The Court has considered the Motion to Dismiss, the Response, and the Reply. The Court finds that Defendant has not produced any evidence of actual vindictiveness or shown there is a realistic likelihood of vindictiveness, and therefore the Motion to Dismiss should be **DENIED**.

I.      **Background**

On December 4, 2013, a federal grand jury issued a three-count indictment charging Defendant with the following offenses: (i) conspiracy to possess with the intent to distribute five or more kilograms of cocaine in violation of 21 U.S.C. § 846, an "A-level" offense; (ii) attempt to possess with the intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 846, a "B-level" offense; and (iii) possession with the intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), a "C-level" offense. (Doc. 13). Over the course of the next year, the Government and Defendant exchanged and reviewed discovery and engaged in plea negotiations.

On November 15, 2014, Defendant's current counsel entered her appearance in this case. (Doc. 70). On November 21, Defense counsel asked the Assistant United States Attorney ("AUSA") to keep the existing plea offer open until the motions deadline, but also indicated the high likelihood that this case would go to trial. (Doc. 142 at Ex. 1). The AUSA also informed Defense counsel that he did not plan to pursue the A-level conspiracy offense charged against Defendant because he received information that Defendant was not part of the negotiation to purchase five kilograms of cocaine. (Doc. 116 at Ex. 4; Doc. 142 at Exs. 1 & 2).

On November 26 and December 12, the Government requested information from the Homeland Security Investigations case agent about the firearm that was seized from the Dodge Nitro that Defendant was driving on the date of his arrest. (Doc. 142 at 3 & Ex. 4). On December 3, Defense counsel requested a copy of the discovery in the case. (Doc. 116 at Ex. A; Doc. 142 at Ex. 3). The AUSA responded and attached the discovery to an email, and noted that he still needed to provide Defendant with "a nexus report on

the revolver." (*Id.*). Defense counsel then asked whether there were any recordings, and the AUSA responded that there were none to his knowledge. (Doc. 116 at Ex. A & B). On December 12, the AUSA inquired as to the status of the outstanding plea offer, and specifically brought to Defense counsel's attention the cocaine and revolver that had been seized from the Dodge Nitro after Defendant's arrest. (Doc. 142 at Ex. 5). Defense counsel responded that Defendant wanted to proceed to trial. (Doc. 116 at Ex. C; Doc. 142 at Ex. 5).

On January 6, 2015, Defendant filed a motion to suppress the cocaine and firearm that were found in the Dodge Nitro. (Doc. 85). The motion to suppress referenced an audio recording made of the undercover drug transaction, which the AUSA contends he had no knowledge of at that time.[1]  (Doc. 142 at 4). The AUSA subsequently obtained and reviewed the audio recording of the undercover drug transaction, which the Government now contends demonstrates that Defendant was a part of the conspiracy to distribute five kilograms of cocaine. (Doc. 139; Doc. 142 at 4; *Id.* at Ex. 7).

Meanwhile, on January 21, a federal grand jury returned a five-count superseding indictment charging Defendant with the three previous drug trafficking counts in addition to two new counts based on the firearm found in the Dodge Nitro. (Doc. 100). The drug charges, referred to as Counts 4 and 5, were charged as follows: (iv) being a felon in

---

[1] In a separate motion, Defendant requests that the audio recording be excluded because of the Government's untimely delay in producing the recording. (Doc. 117). In its response to that motion, the Government explained that none of the law enforcement agents who were part of the undercover drug deal ever told anyone in the United States Attorney's Office that an audio recording of that deal had been made. (Doc. 139 at 1–2). The Government theorizes that Defense counsel inferred the existence of the audio recording from a live audio feed heard playing in the background of a separate video recording taken by a law enforcement agent who was surveilling the undercover drug deal. (*Id.* at 2). Defendant disputes the veracity of the Government's account, but provides no explanation how Defense counsel knew of the existence of the audio recording. (Doc. 144). This Court need not decide the AUSA's truthfulness here, because it has not been asked to consider the propriety of whether the audio recording should be permitted into evidence at trial.

possession of a firearm, in violation of 18 U.S.C. §§ 922 (g)(1)(A) and 924(a)(2); and (v) carrying, using, and possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). (*Id.*). On February 4, the Government disclosed to Defendant copies of recordings of the undercover drug transaction. (Doc. 116 at Ex. F; Doc. 139). Defendant subsequently moved, and the Court agreed, to continue the trial date scheduled for March 9, 2015. (Docs. 140, 141). The Court has taken Defendant's request to reset trial for June 2015 under consideration. (*Id.*).

Defendant then filed the subject motion to dismiss the A-level conspiracy charge (Count 1) and the gun-related charges (Counts 4 and 5) of the superseding indictment, alleging that the prosecution acted with a vindictive motive. Defendant claims that the AUSA acted with the intent to punish Defendant for exercising his constitutional rights in acquiring the superseding indictment. As evidence of alleged vindictiveness, Defendant points out that the Government maintained the preexisting A-level conspiracy charge, despite the prosecution's previous statement that Count 1 would not be pursued at trial. Further, Defendant argues that the prosecution's year-long delay in charging the two firearm-related counts evinces that those charges were only added in retaliation for Defendant's decision to proceed to trial. Defendant also asserts that the Court should use its supervisory power to dismiss Count 1 because of the Government's delay in giving a copy of the audio recording to Defendant.

## II.   Standard of Review

A vindictive prosecution claim is a mixed question of law and fact. *United States v. Thomas*, 410 F.3d 1235, 1246 (10th Cir. 2005). A prosecutor whose objective is to "to punish a person because he has done what the law plainly allows him to do" is a violation

of the due process clause and "patently unconstitutional." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). To prevail on a claim of vindictive prosecution, a defendant must "demonstrate a due process violation by showing either (1) actual vindictiveness or (2) a realistic likelihood of vindictiveness which gives rise to a presumption of vindictiveness." *Thomas*, 410 F.3d at 1247. Once a defendant makes his prima facie showing, the burden shifts to the Government "to justify its charging decisions with legitimate, articulable, objective reasons." *Id.* If the defendant does not meet his burden of proof, however, the Court does not proceed to the government justification issue. *United States v. Raymer*, 941 F.2d 1031, 1040 (10th Cir. 1991).

## III.    Analysis

Defendant contends that a realistic likelihood of vindictiveness exists in this case because the Government filed the superseding indictment only after he filed a motion to suppress evidence and unequivocally asserted his intention to bring this case to trial. (Doc. 116 at 8). Defendant argues that the two gun-related charges that were added in the superseding indictment expose him to an increase in his possible sentence. (*Id.*). He further maintains that the Government sought an A-level conspiracy charge against him again, even though the AUSA previously stated that the Government would not pursue that charge at trial. (*Id.*). Defendant claims that the superseding indictment is the result of the Government's motive to punish him for exercising his constitutional right. (*Id.*). Defendant requests that the Court hold an evidentiary hearing to inquire whether the Government can provide sufficient justification for its actions, and contends that if it cannot, then Counts 1, 4, and 5 of the superseding indictment should be dismissed. (Tr. 2 at 91 ¶¶ 15–17).

5

The Government responds that Defendant cannot meet his initial burden that a realistic likelihood of prosecutorial vindictiveness exists, primarily because the superseding indictment was brought before trial and not after. (Doc. 142 at 10–15). The Government points out it is well-established that there is generally not a presumption of vindictiveness for prosecutorial conduct in the pretrial context, and that Defendant has failed to provide proof of actual vindictiveness or of circumstances that would distinguish this case from precedent. (*Id.* at 12–13). Therefore, the Government maintains that Defendant is not entitled to a hearing on his unsupported Motion to Dismiss, and declines to provide justification to establish the AUSA's permissible motives in bringing the superseding indictment. (*Id.* at 15–16).

As explained above, Defendant bears the burden of showing actual vindictiveness or a realistic likelihood of vindictiveness. *Raymer*, 941 F.2d at 1040. Vindictiveness exists where the prosecutor has brought charges that are "not in the public interest that could be explained only as a penalty imposed on the defendant" in retaliation for his exercise of a protected right. *United States v. Goodwin*, 457 U.S. 368, 384 (1982).

Actual vindictiveness is shown when the defendant comes forward with "direct evidence, such as evidence of a statement by the prosecutor," that demonstrates an improper motive. *United States v. Johnson*, 171 F.3d 139, 140 (2d Cir. 1999) (per curiam). Defendant in this case does not put forward any direct evidence demonstrating that the AUSA had an improper motive or actual intent to punish and deter him from proceeding to trial. *See Goodwin*, 457 U.S. at 380–81. Thus, the Court turns to the question of whether Defendant has established that a realistic likelihood of prosecutorial vindictiveness exists in this case.

Defendant argues that the charging of the superseding indictment on the heels of the breakdown of plea negotiations demonstrates a realistic likelihood of vindictive prosecutorial motive. Generally, the Court must look to the totality of the objective circumstances surrounding the prosecutorial decision, to answer whether "as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or punitive animus towards the defendant because he exercised his specific legal right." *Raymer*, 941 F.2d at 1042 (quotation omitted).

However, in *Goodwin*, the Supreme Court explained that there is no presumption of vindictiveness when the prosecution indicts a defendant on higher or different charges prior to trial after plea negotiations fail. *Goodwin*, 457 U.S. at 384. Put another way, when new charges are brought prior to trial, the district court may not presume that the prosecution had an improper motive solely on the basis of the timing of the filing of the new charges. *See generally id.* at 381–84 (advising further that courts should not presume that a prosecutor's probable response to pretrial motions, such as motions to suppress evidence, "is to seek to penalize and deter"); *see also United States v. Sarracino*, 340 F.3d 1148 (10th Cir. 2003), *United States v. Lampley*, 127 F.3d 1231, 1245 (10th Cir. 1997), and *United States v. Vallo*, 238 F.3d 1242, 1249 (10th Cir. 2001). The Tenth Circuit has held that when the facts of a case are not materially different from those in *Goodwin*, there is no presumption of vindictiveness, and therefore the district court need not conduct a totality-of-the-circumstances analysis. *See Raymer*, 941 F.2d at 1040.

Defendant attempts to distinguish the facts in this case from those in *Goodwin* on several bases. First, Defendant argues that the timing of the superseding indictment is

7

analogous to the facts in *United States v. Wood*, 36 F.3d 945 (10th Cir. 1994), because the decision to indict was not based on a change in circumstances, but came soon after Defendant exercised his constitutional right to proceed to trial. (Doc. 116 at 9). Defendant points out that the superseding indictment was brought 40 days after he unequivocally rejected the plea offer, and 14 days after he filed his motion to suppress. Thus, Defendant concludes, the chronology of events is indicative of vindictiveness by the prosecution.

However, the Tenth Circuit was careful to distinguish the facts in *Wood* from *Goodwin*, nothing that the challenged change to the charges in *Wood* was made following an initial trial, and not as a pre-trial decision. *Wood*, 36 F.3d at 946. Given that the superseding indictment was charged prior to trial and not after, *Wood* is inapplicable to this case. Further, since Defense counsel entered her appearance on November 15, 2014, she has continually affirmed Defendant's desire to proceed to trial. Thus, the Court does not find it likely there is a causal relationship between Defendant's final rejection of the plea offer and the bringing of the superseding indictment because there was not an actual change in the posture of the case.

Defendant also argues that the circumstances here are materially different from those in *Goodwin* because the AUSA communicated to Defense counsel that the Government did not intend to prove the A-level conspiracy offense at trial. Defendant maintains that the inclusion of Count 1 in the superseding indictment violates fundamental notions of due process. *See Snyder v. Mass.*, 291 U.S. 97, 116, 117 (1934). The AUSA responds that he made this representation prior to learning about the audio recording, and that after he reviewed the recording the Government's strategy changed.

8

Defendant further attempts to distinguish this case from *Goodwin* on the basis that the AUSA waited over a year to bring the gun-related charges. The Government contends that the AUSA used appropriate discretion to wait to charge the gun offenses, and that none of the facts presented here give rise to a presumption of vindictive motive.

The Tenth Circuit has explicated that prior to trial, the prosecutor is still in the process of acquiring and analyzing information, and should be permitted a relatively free hand in deciding whether the defendant should be charged with additional crimes. *United States v. Doran*, 882 F.2d 1511, 1519–20 (10th Cir. 1989) (discussing *Goodwin*, 457 U.S. at 381). This is because the prosecutor may still uncover new information to suggest a basis for further prosecution, or he may decide that information already possessed by the Government is more significant than initially realized. *Goodwin*, 457 U.S. at 381. Further, pretrial assertion of procedural rights is routine. *Doran*, 882 F.2d at 1520. As long as the AUSA had probable cause to believe that Defendant "committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher*, 434 U.S. at 364.

Here it is not in dispute that the A-level conspiracy charge and the gun-related charges are justified by the evidence, and that the AUSA was in actual or constructive possession of the evidence supporting those charges at the time the superseding indictment was charged. The Government never formally dismissed the A-level conspiracy charge against Defendant, only discussed not pursuing that charge at trial. Even though Defendant claims that he relied on the Government's repeated representations it would not pursue the A-level conspiracy charge in deciding to reject the plea offer, Defendant must "live with the consequences of his tactical choice."

9

*Sarracino*, 340 F.3d at 1179. "A claim of vindictive prosecution cannot insulate the defendant from the lawful consequences of his tactical choices." *Id.* (quotation omitted).

Further, Defendant was made aware that the Government had found a revolver in the Dodge Nitro, and that there may be probable cause to seek indictment of Defendant for possible gun-related charges. The fact that a firearm had been found in the Dodge Nitro was brought directly to Defense counsel's attention by the AUSA as early as December 4, 2014, which was prior to Defendant's unequivocal statement that he intended to proceed to trial. The AUSA stated that he was still waiting for a nexus report for the firearm but he believed it was likely not manufactured in New Mexico. The AUSA was not required to instruct Defendant of his strategy or intention to bring additional charges, especially when the evidence of a possible charge was explicitly brought to Defense counsel's attention. An initial decision not to charge a particular crime "should not freeze future conduct," because "the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution. *Goodwin*, 467 U.S. at 382.

The U.S. District of New Mexico recently rejected a claim of vindictive prosecution pursuant to *Goodwin* under a similar set of facts as those presented here. *See United States v. Bustamante-Conchas*, 13-CR-2028 JAP, Doc. 271 (D.N.M. July 16, 2014) (unpublished). In *Bustamante-Conchas*, the prosecution informed the defendant that it would seek a superseding indictment in order to charge him with a more serious drug-trafficking offense if plea negotiations failed. (*Id.* at 2). After the defendant elected to proceed to trial, the prosecution filed new and more serious charges. (*Id.*). The defendant claimed that the prosecution acted with a vindictive motive in bringing the superseding

10

indictment, and pointed to a national news article that had been published which named the defendant as a drug trafficker and contained excerpts from an interview with an agent who was also an adverse witness in defendant's case. (*Id*. at 3). That officer had divulged information regarding a wiretap to the reporter, which was not then a matter of public record. (*Id*.).

Bustamante-Conchas argued that his case was distinguishable from *Goodwin* because the case agent's statements in the news article demonstrated prosecutorial motive to prejudice a prospective jury pool. However, U.S. District Judge James A. Parker viewed the proffered evidence as constituting only a "superficial difference" from *Goodwin*, and deemed Defendant's argument to be "mere speculation" and "a red herring." (*Id*. at 5). Judge Parker denied the defendant's motion because "there is no presumption of vindictiveness when the prosecution indicts a defendant on higher (or different) charges after plea negotiations fail." *Bustamante-Conchas*, 13-CR-2028 JAP, Doc. 271 at 4 (citing *Goodwin*, 457 U.S. at 384). Similarly, the only evidence that Defendant has offered to distinguish the facts in this case from *Goodwin* amount to superficial differences. Thus, in consideration of the holding and reasoning of applicable case law, the Court finds that the circumstances surrounding the charging of the superseding indictment fail to demonstrate a likelihood of vindictive motive.

Defendant separately asks the Court to dismiss only the A-level conspiracy charge pursuant to the Court's supervisory powers, alleging that the AUSA's conduct contravened the due process clause. (Doc. 116 at 13–15). Defendant argues that his due process rights were violated because he was not provided with the audio recording of the undercover drug transaction until seven days after the superseding indictment was

charged. (*Id.*). Defendant points out that the Government did not indicate that its disclosure pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), was based on inaccurate information with regard to the audio recording. He argues that the knowledge of the agents who knew about the audio recordings must be imputed on the prosecutor, *United States v. Combs*, 267 F.3d 1167, 1173–75 (10th Cir. 2001), and therefore the AUSA's explanation for the delay is not adequate. Defendant claims that the prosecution's conduct contravenes the values implicit in a concept of ordered liberty, and that the Court should dismiss Count 1 pursuant to an exercise of its supervisory powers. *See United States v. Williams*, 504 U.S. 36, 46 (1992).

There are "three legitimate bases for the exercise of the supervisory power: to implement a remedy for the violation of a recognized statutory or constitutional right; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and to deter future illegal conduct." *United States v. Simpson*, 927 F.2d 1088, 1090 (9th Cir. 1991) (citing *United States v. Hasting*, 461 U.S. 499, 505 (1983)). The Court declines to determine whether any of the legitimate bases for the exercise of its supervisory powers are present here because the alleged error committed by the prosecution was cured when Defendant was provided a copy of the audio recording. *See Hasting*, 461 U.S. at 509 ("[I]t is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations."). The Government has explained its intention to pursue the A-level conspiracy charge based on the newly-acquired evidence. Any argument that could be made that Defendant is prejudiced or unduly surprised on the eve of trial is made moot by the continuance of trial to June 2015. (Docs. 140, 141).

12

In sum, the Court finds that the record does not support a claim of either actual vindictiveness or the realistic likelihood of vindictiveness. The Court also declines to exercise its supervisory powers to dismiss any of the charges in the superseding indictment. Therefore, it is recommended that the Motion to Dismiss be denied.[2]

## IV.   Recommended Disposition

For all of the foregoing, the Court **RECOMMENDS** that *Defendant Edgar Solis's Motion to Dismiss the Superseding Indictment for Vindictive and Retaliatory Prosecution and for Violations to His Right to Due Process*, (Doc. 116), be **DENIED**.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____

THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE

---

[2]  An evidentiary hearing is not required in deciding this matter because Defendant has not presented sufficient evidence to raise a reasonable doubt concerning the prosecution's conduct. *See United States v. Falcon*, 347 F.3d 1000, 1004 (7th Cir. 2003) ("To obtain the evidentiary hearing [Defendant] seeks, he must offer sufficient evidence to raise a reasonable doubt that the government acted properly in bringing the [challenged] charge.").