IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                         No. CR 13-3895 MCA

EDGAR SOLIS,

Defendant.

## ORDER ADOPTING MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDATIONS, OVERRULING DEFENDANT'S OBJECTIONS AND DENYING DEFENDANT'S MOTION TO SUPPRESS

**THIS MATTER** is before the Court on United States Magistrate Judge Carmen E. Garza's *Proposed Findings and Recommended Disposition* (PFRD), filed on March 20, 2015 [Doc. 160], *Defendant Edgar Solis' Objections to the Magistrate Judge's Proposed Findings and Recommended Disposition on Defendant's Motion to Suppress* filed on March 27, 2015 [Doc. 166], and *United States Response to Defendant's Objections To Magistrate Court's Proposed Findings of Facts and Conclusions of Law Regarding Suppression*, filed on April 1, 2015 [Doc. 172]. The Motion to Suppress is filed in this cause as Docket entry 85. After a *de novo* review of the parties' submissions, the PFRD, the Objections, and the record, this Court adopts the PFRD and overrules Defendant's objections.

### I.      Background

Judge Garza ably set out of the pertinent facts in the PFRD. This Court adopts and incorporates those facts here. Facts are repeated below to provide context.

Defendant is charged with various drug trafficking and firearm offenses.  *Redacted Indictment* [Doc. 100]   The charges arise out of his arrest during an undercover drug transaction on November 13, 2013 and two subsequent searches of the Dodge Nitro (car) that he was driving on that date.  The car was search pursuant to a search warrant on November 13, 2013 and searched again by an HSI Seized Property Specialist pursuant to the U.S. Customs and Border Patrol's Seized Asset Management and Enforcement Procedures Handbook (SAMEPH) on November 27, 2013.  *See* Govt. Ex. 10.  The first search uncovered cocaine concealed within one of the car doors.  The second search uncovered a firearm concealed in the center console of the car.

Defendant challenges the legality of both searches and seeks suppression of the cocaine and firearm.  *Defendant Edgar Solis' Motion to Suppress Evidence and Memorandum in Support Thereof* [Doc. 85].  On February 11 and 20, 2015, Judge Garza held evidentiary hearings on Defendant's motion.  [Doc. 127; Doc. 143]  After receiving proposed findings of fact and conclusions of law from both parties, Judge Garza issued Proposed Findings and Recommendations.  [Doc. 160]  Defendant filed objections. [Doc. 166]  Judge Garza's rulings, Defendant's objections, and this Court's reasoning in overruling Defendant's objections are set out below.

## I.    The good-faith exception applies.

Neither party objects to Judge Garza's determination that the search warrant was not supported by probable cause.  Instead, the Government argues that the good-faith exception to the warrant requirement applies and Defendant objects.  When a warrant is not supported by probable cause, the good faith exception to the exclusionary rule

provides that "the evidence seized pursuant to the warrant need not be suppressed if the executing officer acted with an objective good-faith belief that the warrant was properly issued by a neutral magistrate." *United States v. Augustine*, 742 F.3d 1258, 1262 (10th Cir. 2014). However, there are four situations in which the good-faith exception does not apply. *Id.* Defendant raises two here: (1) "when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (2) "when the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his reckless disregard of the truth." *Id.* (internal quotation marks and citation omitted). Each are addressed in turn.

a. **The search warrant affidavit was not so lacking in indicia of probable cause to render reliance on it unreasonable.**

Judge Garza concluded that the warrant was lacking probable cause because "the affidavit was too vague, generalized, and insubstantial to connect the Dodge Nitro to evidence of the suspected criminal activity." [Doc. 160 at 14] After determining there was no probable cause, Judge Garza considered and rejected Defendant's argument that the good faith exception should not apply because the affidavit was so lacking in indicia of probable cause to render reliance upon it unreasonable. [Doc. 160 at 17] Relying on *United States v. McKneely*, 6 F.3d 1447, 1455 (10th Cir. 1993) Judge Garza reasoned that "[w]hen a warrant affidavit contains sufficient facts to at least establish 'reasonable suspicion of criminal activity' then the Court must find that a reasonable officer would have assumed the search warrant was valid." [Doc. 160 at 17]

Defendant argues that the affidavit here was so "barebones" that reliance on it was unreasonable; accordingly, he objects to Judge Garza's application of the good faith exception.  He argues that Judge Garza's determination that the affidavit did not lack indicia of probable cause is "anomalous and inconsistent with [Judge Garza's] finding that the affidavit was lacking any evidence linking the Dodge Nitro to criminal activity." [Doc. 166 at 6].  The Court disagrees.

Since *McKneely*, our Tenth Circuit decided *United States v. Gonzales*, 399 F.3d 1225 (10th Cir. 2005).  In *Gonzales*, it explained that even where a search warrant affidavit fails to establish evidence of a nexus to show a substantial basis for probable cause, the good faith exception may still apply where there the "minimal nexus requirement" is met.  *Gonzales*, 399 F.3d at 1231 ("good faith may exist when a minimal nexus between the place to be searched and the suspected criminal activity is established.").  Thus, a lack of showing of a substantial nexus between the alleged criminal activity or contraband and the place to be searched is fatal for a finding of probable cause, but does not automatically preclude the application of the *Leon* good-faith exception.  *See, e.g., United States v. Roach*, 582 F.3d 1192, 1203-04 (10th Cir. 2009) (holding no nexus to support probable cause, but concluding affidavit not so lacking in indicia of probable cause so as to preclude the application of the good faith exception); *United State v. McPhearson*, 469 F.3d 518, 526 (6th Cir. 2006) ("the failure to establish probable cause is not dispositive of whether the affidavit could support a reasonable belief in the validity of the search warrant for purposes of the exclusionary rule.").

In overruling Defendant's objection the Court analyzes whether the affidavit for search warrant meets the minimal nexus requirement.[1]   "[A]n affidavit establishes a sufficient nexus when it describes circumstances which would warrant a person of reasonable caution in the belief that the articles sought are at a particular place." *Augustine*, 742 F.3d at 1263.  As the Sixth Circuit has explained, the determination of whether an affidavit is so "bare bones as to preclude the application of the good-faith exception is a less demanding inquiry than the one involved in determining whether the affidavit provided a 'substantial basis' for . . . probable cause."  *McPhearson*, 469 F.3d at 526.  This makes sense because "[i]f the inquiries were identical, the probable cause determination would subsume the good-faith exception."  *Id.*

The Affidavit here set out eight categories of items to be searched for: (1) cocaine and controlled substances, (2) paraphernalia associated with the selling, packaging, concealing, manufacturing, and ingesting of any such substance, (3) documents showing control over the car, (4) documents related to money laundering, (5) photographs or film depicting possession, negotiation, selling, purchasing, manufacturing, or distribution of a controlled substance, (6) communication devices used in the selling of controlled substances, (7) currency or other fruits of the crime directly associated with drug trafficking, and (8) all firearms.  *See Affidavit* [Doc. 85-1] The Affidavit contains information that Defendant drove to the location of the drug transaction in the Dodge

---

[1] Defendant's argument is based on the lack of nexus between criminal activity or contraband and the Dodge Nitro, which is the place to be searched.  *See* Doc. 166 at 7.   While Defendant provides the Court with citations to numerous out of circuit cases regarding "barebones" affidavits, he does not cite any Tenth Circuit cases or acknowledge the minimal nexus requirement.  Rather he maintains "nothing linked the Dodge Nitro to evidence of drug trafficking.  Therefore, the affidavit was bare bones and the good faith exception does not apply."  [Doc. 166 at 5]

Nitro. *Id.* The Affidavit indicates that he arrived after "Daniel [] made a phone call to another subject (Edgar Solis-Castillo) and told him to come to the Cosco to test the cocaine." *Id.* The Affidavit also describes Defendant sampling the cocaine and discussing its quality with Daniel.  The Affidavit states that after Defendant discussed the quality, "Daniel advised that he and [Defendant] were going to do another test on the kilo of Cocaine that [Daniel] had opened and if they liked the quality, they would purchase the other 4 kilos."  *Id.*  It also contains information about the affiant: that he has been a law enforcement officer for 23 years whose duties include narcotics investigations and who, through his training and experience knows "illegal drug traffickers use firearms to protect their investment from rival drug dealers and drug users."  *Id.*

Based on the information contained in the Affidavit the Court concludes that the minimal nexus requirement is met here so that the good-faith exception to the exclusionary rule applies.  In addition to cocaine, the warrant authorized the search of the vehicle for communication devices and firearms.  The facts contained in the Affidavit indicate that Daniel Solis called Defendant who then arrived at the scene of the drug transaction in the Dodge Nitro.  There is no information that a cellular phone was found on Defendant's person when he was arrested.  It is not unreasonable to think that this communication device could be concealed in the car.  The affiant also included information that through his training and experience he knew illegal drug traffickers to use firearms to protect their investment and sought to search the car for firearms.  *See Augustine,* 742 F.3d at 1263 (considering, in addition to other facts, "the affidavit included the statement of a veteran law enforcement officer that persons involved in the

drug trade often secrete contraband and evidence of drug transactions in their homes."). From the facts in the Affidavit it can also be reasonably inferred that Daniel and Defendant intended to leave the Costco or at least move away from the undercover vehicle with the kilo of cocaine for further testing.  It is not unreasonable to think that this kilo of cocaine was an investment, either Daniel's or both brothers', and that Defendant might participate in the protection of it if he was also participating in the testing of its quality.  Taking the above information from the Affidavit into account, the Court concludes that the affidavit describes circumstances that would warrant a person of reasonable caution in the belief that some of the items to be searched for, such as communication devices and firearms, would be found in Defendant's car and thus established a minimal nexus.

Defendant argues that like the affidavits in *United States v. Underwood*, 725 F.3d 1076 (9th Cir. 2013) and *McPhearson*, the Affidavit here is so bare bones that the good faith exception cannot apply.  [Doc. 166 at 5, 7]  Both *Underwood* and *McPhearson* are distinguishable from the case at hand.  In *Underwood*, the defendant was arrested after federal law enforcement conducted a months' long wiretap investigation into a suspected drug trafficking organization (DTO).  *Underwood*, 725 F.3d at 1078-79.  Three months before he was arrested, law enforcement observed him meet the leader of the DTO in a parking lot and deliver two large unmarked wooden crates to him.  *Id.* at 1078.  These crates were later found to contain thousands of illegal pills.  *Id.*   The defendant was arrested pursuant to a federal warrant, but there was no warrant for the search of his home where he was arrested.  *Id.* at 1079. During a protective sweep of the home, law

enforcement observed a clear plastic bag with a personal use amount of marijuana.  *Id.*

Local officers then obtained a search warrant for that home.  *Id.*

The defendant challenged the warrant and the Ninth Circuit held that it lacked

probable cause and was so barebones that it failed to provide even a colorable argument

for probable cause so that the good faith exception did not apply.  *Id.* at 1085-86.  There,

the fact that a personal-use amount of marijuana was observed was not sufficient to

support probable cause to search the house and the affidavit failed to provide any other

sufficient factual basis.  It alleged that the defendant was a drug courier for an ecstasy

trafficking organization, but the only fact supporting this conclusion was that the

defendant had been observed three months earlier delivering the two crates.  *Id.* at 1086.

Missing from the affidavit was the fact that those crates contained illegal drugs.  *Id.* Nor

were there any facts showing a basis for the conclusion that evidence of drug trafficking

would be found in the defendant's home.  *Id.*

Unlike in *Underwood*, where there was nothing in the affidavit to support even an

inference that the defendant was involved in drug trafficking, here Defendant arrived at

the scene of a drug transaction.  He arrived at the behest of Daniel who had arranged to

meet with the undercover agents to purchase between 5 and 8 kilograms of cocaine and

he came to test the cocaine.  In *Underwood,* the affidavit contained facts that the

defendant was seen in a parking lot delivering wooden crates and this did not support an

inference that he was involved in drug trafficking.  Here the Affidavit contains facts that

Defendant met with undercover officers and observed one kilo of the cocaine, touched it,

tested it, and commented on its quality in their presence.  These are all facts that would

indicate, at least for the purposes of the good faith inquiry, that Defendant was involved in this drug transaction involving a large quantity of cocaine.  As explained above, other facts set out in the affidavit connected Defendant and the car to the criminal activity and the evidence to be sought.  Considering all of these details, the Affidavit here contains far more facts regarding Defendant and the alleged criminal activity than the affidavit in *Underwood* and the Court concludes it is not a "barebones" affidavit.  The affidavit in *Underwood* reasonably supported only innocent conclusions.  *Id.* at 1086.  The same cannot be said here.

*McPhearson* is another case where the defendant was arrested pursuant to a warrant and drugs were found at the time of the arrest.  *McPhearson*, 469 F.3d at 520. There, defendant was arrested for simple assault, walked to the squad car, then patted down.  *Id.*  The pat down revealed crack cocaine in his pocket.  *Id.* Officers then decided to obtain a search warrant for his residence.  *Id.* at 521.  The discovery of the drug  in the defendant's pocket was the only factual basis provided for the search of the residence. *Id.* at 521, 524.  The court held that the fact that the defendant was arrested at his residence with crack cocaine in his pocket "cannot establish the minimal nexus that has justified the application of the good-faith exception in cases where the nexus between the place to be searched and the evidence to be sought was too weak to establish probable cause."  *Id.*  at 526.  This Court agrees.  Again, in Defendant's case, the Affidavit contains many more facts connecting him and the car to drug-trafficking so as to provide a minimal nexus.  Unlike the defendant in McPhearson, who was contacted by authorities on a matter unrelated to drugs, here law enforcement encountered Mr. Solis during an

ongoing drug transaction.  While drugs were not found on his person, the Court finds it is significant that he was summoned by phone to a drug transaction involving multiple kilograms of cocaine to assist in testing the quality.

For the foregoing reasons the Court concludes that the search warrant affidavit was not so lacking in indicia of probable cause so as to make reliance on it unreasonable; therefore the good-faith exception applies.

### b. The Court adopts Judge Garza's conclusion that the *Franks* exception does not apply.

Judge Garza held an evidentiary hearing under *Franks* where Detectives Rascon and Martinez testified as to their memories of what happened on November 13, 2013. *See* [Doc. 16 at 18] A Spanish language expert for each party also testified regarding the content of the recording of the undercover transaction.  The PFRD reflects that Judge Garza carefully considered the witnesses' testimony and Defendant's arguments.  She correctly states that "[w]hen a defendant raises a *Franks* challenge, as here, he must establish knowing or reckless falsity by a preponderance of the evidence before he may obtain suppression of the evidence obtained from the search."  [160 at 20-21]  After considering the testimony of the detectives as well as the "two credible Spanish-language experts, who disagree regarding the substance of several parts of the conversation that are in dispute," Judge Garza concluded that Defendant has not met his burden.  [160 at 22]

Defendant makes a brief objection to Judge Garza's PFRD.  [Doc. 166 at 8-9] He states "the evidence showed that the affiant made reckless misrepresentations in order to falsely bolster probable cause" and provides the Court with a list of citations to transcript

pages without further explanation. [Doc. 166 at 9] He asserts that "[w]hile the misrepresentations may not have been intentional, they were, at a minimum, reckless and therefore, the court should have suppressed any evidence seized and found that based on this exception, the good faith exception did not apply." [Doc. 166 at 9]

The Court finds no flaw with Judge Garza's reasoning and opinion on this matter. Although Defendant objects in name, Defendant does not provide the Court with any explanation regarding the alleged reckless misrepresentations cited to in the transcript, or discuss the content of the transcript at all. He does not discuss evidence or authority supporting this position. While Defendant cites general authority regarding the inapplicability of the good-faith exception where an issuing magistrate was misled by false information contained within the affidavit, these citations are insufficient here. Accordingly, the Court overrules Defendant's objection and adopts Judge Garza's PFRD on this point.

## II.     The November 27, 2013 search of the car by HSI was lawful.

Defendant also challenges the November 27, 2013 search of the car that was conducted by Homeland Security Investigations. Judge Garza found "that the Dodge Nitro was searched lawfully on November 27, 2013 pursuant to a reasonable pre-forfeiture inventory search procedure." [Doc. 160 at 33] She concluded that the search was administered in good faith and, "[i]n the complete absence of any evidence that the officers were searching the Dodge Nitro for the sole purpose of seeking out evidence, [Judge Garza found] that the warrantless inventory search was reasonable." [160 at 31] Judge Garza also concluded that although Defendant argued that the November 27 search

11

could not be considered an inventory search because the car had been inventoried on November 14, there is no prohibition on multiple inventory searches.  [Doc. 160 at 31]

Defendant objects.  He contends that Judge Garza's conclusion that the search was a valid administrative search is erroneous because "the search must not have an unlawful secondary purpose."  [Doc. 166 a 13]  Defendant argues that the search was unlawful because its purpose was to locate contraband.  *Id.*   The Government counters that Defendant misstates the standard and asserts that Judge Garza correctly concluded that an inventory search is not unconstitutional where it has an investigatory purpose, so long as that is not the sole purpose.  [Doc. 172 at 6-7]; [160 at 30 (citing *United States v. Judge*, 864 F.2d 1144, 1147 (5th Cir. 1989) and *United States v. Frank*, 864 F.2 992, 1001 (3rd Cir. 1988))]

The Court understands Defendant's objection to go to point three of Judge Garza's PFRD.  *See* [Doc. 160 at 29] There Judge Garza addressed Defendant's contention that the search was unlawful because it was conducted with an investigatory purpose.

In support of this objection, Defendant cites *United States v. $124,570 U.S. Currency*, 873 F.2d 1240, 1245 (9th Cir. 1989).  The question before that court was "whether the use of the airport security screening system to achieve ends unrelated to air safety violates the constitutional rights of air travelers."  *Id.* at 1243.  There, a screening agent observed a large amount of cash in a traveler's briefcase and, per policy, alerted the DEA who then sought out the traveler. *Id.* at 1241. The screener received a monetary reward for the tip.  *Id.*  The traveler opened his briefcase for agents, revealing bundles of

currency.  *Id.* at 1242.  The cash became the subject of a civil forfeiture action.  *Id.* at

1242.

The court was concerned not only about the screening agents' dual objectives –

airport safety and providing tips to the DEA – but also about their broad latitude in

deciding who and how deeply to search.  *Id.*  at 1245.  It was concerned that particularly

zealous agents would be influenced by the monetary reward and conduct more, and more

intrusive searches than if they were only focusing on airport safety.  *Id.* at 1245-46.  The

Ninth Circuit had previously upheld the airport screening for weapons and explosives in

another case, but found that the policy by which screeners provided tips to the DEA for

cash "effectively transform[ed] a limited check for weapons and explosives into a general

search for evidence of crime."  *Id.*  at 1247.

This Court is not persuaded by *$124,570 U.S. Currency* and finds Defendant's

contention unavailing.  A more recent Tenth Circuit case cited by Defendant contains the

general rule that "an inventory search is not rendered unconstitutional simply because it

also had an investigatory purpose, provided that is not the sole purpose."  *United States v.*

*Moraga*, 76 Fed. Appx. 223, 228 (10th Cir. 2003) (citing *Frank*, 864 F.2d 992, 1001 (3rd

Cir. 1988)).  *See* [Doc. 166 at 10] This is the standard applied by Judge Garza.

Defendant contends that the search was unlawful because Shannon Barkley, the HSI

seized property specialist, testified that the purpose of the search was to locate

contraband.  [Doc. 166 at 13]  However, as Judge Garza pointed out, SPS Barkley also

testified that the SAMEPH search is conducted for the purpose of finding and securing

personal property.  [160 at 30]  This is a permissible purpose of inventory searches.  *See*

*Colorado v. Bertine*, 479 U.S. 367, 372 (1987). Citing *Bertine*, 479 U.S. at 372-73, Judge

Garza correctly reasoned that "a warrantless inventory search is permissible when

completed for the purpose of uncovering evidence, as long as that is not the sole purpose

of the search." [160 at 30]  The Court agrees.

Additionally, the car was searched prior to its release to the owner.  It follows that

a search of the vehicle, which had been seized due to its involvement in criminal activity,

to ensure that it does not contain dangerous contraband serves to protect police and public

safety.  *See Bertine*, 479 U.S. at 373 (inventory of impounded vehicle in secure lot

reasonable under the Fourth Amendment where "the police may still wish to protect

themselves or the owners of the lot against false claims of theft *or dangerous*

*instrumentalities*.") (emphasis added); *Illinois v. Lafayette*, 462 U.S. 640, 646 (1983)

(upholding station house inventory of arrestee's property and reasoning "[dangerous

instrumentalities . . . can be concealed in innocent-looking items taken from the arrestee's

possession.  The bare recital of these mundane realities justifies reasonable measures by

police to limit these risks either while the items are in police possession or at the time

they are returned to the arrestee upon his release.  Examining all the items removed from

the arrestee's person or possession . . . inventorying them is an entirely reasonable

administrative procedure.").  The evidence here shows that the search had multiple

permissible purposes.  The Court overrules Defendant's objections and adopts Judge

Garza's PFRD.

Judge Garza also provided information from the record showing that the

SAMEPH search is different than the search in *$124,570 U.S. Currency*.  There the court

was concerned with the influence the monetary reward had on screeners, and the screeners' discretion regarding who to search and how deeply. The evidence here showed that SAMEPH required that all seized or detained motor vehicles be subject to a detailed search within the first 24 hours after seizure, or before consignment to a national seized property contractor or onsite release, whichever comes first. Govt. Ex. 10, §5.1.4; [Doc. 160 at 25-26] The handbook requires a detailed search and recognizes that if the vehicle cannot be screened according to this procedure within the first 24 hours, the screening should take place as soon as possible. Govt. Ex. 10, § 5.1.4. The handbook details how the search of every seized vehicle was to be conducted. *See* Govt. Ex. 10, § 5.1.4 (detailing the search procedure and requirements). This policy does not afford HSI seized property specialists with the discretion found in *$124,570* and thus the same concerns before that court are not in play here. *Frank*, 864 F.2d at 1003 ("This absence of discretion ensures that inventory searches will not be used as a purposeful and general means of discovering evidence of a crime.").

Defendant also asserts that Judge Garza erred in determining that the November 27 search was an inventory search. [Doc. 166 at 11] When the Department of Homeland Security took possession of the car on November 14, 2013, a cursory inventory was made before the car was shipped to the HSI seized property specialist. *See* Govt. Ex. 12. Defendant contends that the inventory search occurred on November 14 and so the November 27 search cannot also be an inventory search. *Id.*

Defendant cites no authority in support of this objection. Judge Garza discussed in detail *United States v. Reyes*, No. 1:11-CR-00009-ODE-RGV, 2012 WL 176488 (N.D.

Ga. 2012), a case factually similar to Defendant's.  Defendant does not address this case

or the application of *Cooper v. California*, 386 U.S. 58 (1967) by the *Reyes* court or

Judge Garza's reasoning.  Judge Garza's recommendation is well reasoned and the Court

adopts it, overruling Defendant's objection.

### III.   CONCLUSION

For the reasons explained above, the Magistrate Judge's *Proposed Findings and*

*Recommended Disposition* is ADOPTED, the Court's reasoning as to the good-faith

exception is incorporated, *Defendant Edgar Solis' Objections to the Magistrate Judge's*

*Proposed Findings and Recommended Disposition on Defendant's Motion to Suppress*

[Doc. 166] is OVERRULED and *Defendant Edgar Solis' Motion to Suppress Evidence*

*and Memorandum in Support Thereof* [Doc. 85] is DENIED.

IT IS SO ORDERED this 23rd day of December, 2015.

_____
M. CHRISTINA ARMIJO
Chief United States District Judge